*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.

McGEHEE, et al. *v.* WOLCHANSKY.

Mar. 23, 1953

No. 38707      25 Adv. S. 40      63 So. 2d 549

*Stevens & Canada,* for appellants.

92

*Wells, Thomas, Wells & Smith,* for appellee.

Hall, J.

Appellee, Howard Wolchansky, applied to the Public Service Commission for authority to purchase a certificate of public convenience and necessity from Young and Chamberlain for intrastate transportation between all points and places in Mississippi of household goods, furniture, fixtures, etc., and any article requiring specialized handling and equipment usually employed in moving household goods.

Due notice was given and a public hearing had at which the appellants herein appeared and protested against approval of the transfer. The Commission entered an order authorizing the sale and transfer of Young and Chamberlain's certificate and on appeal the circuit court affirmed that action and from the judgment of the circuit court this appeal is prosecuted.

It must be noted at the outset that this proceeding is not governed by the law relating to the granting of a new certificate of public convenience and necessity but is controlled by Section 7652, Code of 1942, the applicable portion of which here involved is as follows: "If, after such hearing the Commission finds that the transaction proposed is in good faith, that the proposed assignee, lessee, purchaser or transferee is fit and able properly to perform the transportation services authorized by such certificate or permit and to comply with the rules, regulations and requirements of the Commission hereunder, and that the transaction is otherwise consistent with the public interest" the Commission may approve the sale and transfer.

In its order authorizing the transfer of the certificate the Commission made all the findings set out in the above quotation from the statute. The evidence shows that the proposed transfer is in good faith and that appellee is fit and able to properly perform the transportation services authorized by the certificate and to comply with the rules, regulations and requirements of the Commission,

and appellants do not seriously question the sufficiency of the evidence to support such findings. Their main argument is directed to the contention that there is no evidence to show that such transfer would be ''consistent with the public interest'' for which reason they ask that we reverse the order of the Commission and deny Wolchansky's application for authority to purchase the certificate.

Appellants argue that decisions affecting interstate carriers are controlling here since there is no Mississippi decision on the precise point presented. They cite numerous cases dealing with ''public interest'' but the phrase with which we are here concerned is ''consistent with public interest.'' Apparently the first time that ''consistent with public interest'' appeared in the federal statutes was in Section 213 (2) 1 of Chapter 498, Vol. 49, Part 1, United States Statutes at Large, 74th Congress, approved August 9, 1935, relating to acquisition of motor carrier rights, and a transfer of such rights was therein authorized if, after a hearing, the Interstate Commerce Commission ''finds that the transaction proposed will be consistent with the public interest.'' That was the sole criterion for authorizing a sale and transfer of a permit. The quoted provision was changed in 1940 by the addition of several other requisite findings.

The Mississippi statute is not an exact counterpart of the federal statute but does use the phrase ''consistent with the public interest'' in addition to the other requirements above noted.

██ ■ Appellants showed that Young and Chamberlain have not operated under their certificate since 1949 but the fact remains that it is still valid and outstanding and that no proceeding for its revocation has ever been instituted as might have been done under Section 7651, Code of 1942. Since Young and Chamberlain's certificate has not been revoked it remains an outstanding and valid certificate. This conclusion is in accord with decisions of

the Interstate Commerce Commission. Quaker City Bus Company—Purchase—Blackhawk Lines, 38 M. C. C. 603.

Appellants offered proof to the effect that they have ample facilities for handling all of the intrastate moving for which there is a demand in Mississippi, that they have encountered no competition from Young and Chamberlain, and that competition from appellee would injure their business. They also offered proof that it was necessary, or at least desirable, for carriers by motor vehicle to have available space for storage, and they argue that appellee did not testify whether he would or would not provide such storage space for his operations. He did testify, however, that he had had fifteen years experience in the moving business, that he has certificates of convenience and necessity for interstate operations in eight southern states, three western states and as far east as New York; that he has the facilities, equipment, business and the ''know-how'' to properly operate under the Mississippi Public Service Commission the certificate which he proposed to acquire from Young and Chamberlain. He also testified that he has not yet determined whether he would open an office in Mississippi but that if the Commission makes such a requirement he would open an office immediately. In short, it appears that Young and Chamberlain have been rendering no service to the public in the past two or three years and that appellee will render such service. We are impressed with the idea that since appellee is experienced in this type of business and is fit and financially able to perform the services authorized by the certificate and that he is willing to comply with the rules, regulations and requirements of the Commission, the conclusion is inescapable from this evidence that his acquisition of the certificate would result in improved service to the public and is therefore ''consistent with the public interest.'' We are not concerned with the interest of other carriers but with the public interest. Our view is amply supported by de-

cisions of the Interstate Commerce Commission dealing with the phrase "consistent with the public interest" as used in the above mentioned Section 213 of the federal statute.

In Transamerican Freight Lines, Inc.—Purchase—Harold D. Gorman, 5 M. C. C. 712, decided in 1938 under the aforesaid Section 213, the Interstate Commerce Commission said: "Obviously the new through service could impair the revenues of protestants only to the extent that it might be used by the public in preference to presently available service. The issue is whether transfer to applicant of vendor's statutory operating rights is consistent with the public interest, and not whether it is required by public convenience and necessity. There is nothing inconsistent with the public interest in providing the public with improved service, even if it should have an unfavorable effect on the revenues of protestants. It must be borne in mind that no creation of operating rights is here proposed, but only the transfer of existing rights to new ownership. A change in ownership which will enable existing rights to be used in a way that will produce better service can hardly be found to be inconsistent with public interest."

The above was quoted with approval in Gateway City Transfer Co., Inc.—Purchase—J. G. Minert, decided in 1939 under said Section 213, 15 M. C. C. 749, and also in Richard G. Spitzer—Purchase—H. Howe, decided in 1938 under said Section 213, 15 M. C. C. 331.

In Houston & North Texas Motor Freight Lines, Inc.—Purchase—Interstate Motor Freight Lines, Inc., decided in 1938 under said Section 213, 1 F. C. C. 187, it is said: "Protestants also argue that other rail and motor carriers already furnish adequate through scheduled service between these points, and that there is no need for an additional and competitive service by applicant, which should only be authorized upon a showing of public con-

venience and necessity. These arguments are untenable in a Section 213 proceeding.''
Affirmed.

*Roberds, P. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.