RETAIL STORES DELIVERY, INC. & others *vs.* DEPARTMENT OF PUBLIC UTILITIES & an intervener.

Suffolk. May 5, 1959. — June 24, 1959.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Public Utilities. Carrier,* Transfer of stock of carrier, Carrier by motor ve- hicle, Carrier of goods. *Words,* "Consistent with the public interest."

An order of the department of public utilities under the fourth paragraph of § 11 of G. L. c. 159B, added by St. 1951, c. 158, authorizing acquisi- tion by a holding company of all the stock of a corporation operating many motor trucks daily in the eastern part of Massachusetts both as a common carrier of general commodities under an irregular route cer- tificate and as a contract carrier under a permit "not restricted as to commodities or territory" but restricted to operations under such con- tracts as might be on file with the department and noted in the permit from time to time, upon the condition that "if the transaction is con- summated, the contract carrier permit . . . be restricted to the retail delivery of retail store merchandise and . . . the irregular route cer- tificate . . . be restricted to the transportation anywhere in the Com- monwealth of general commodities except the retail delivery of retail store merchandise," did not constitute a grant of a new permit under c. 159B, § 4, or an amendment of a permit under § 12, and did not ex-

---

pand the operations permissible under the permit issued to the corporation, although at the time of the order there was on file with the department only a contract with one customer. [445]

In a contract carrier permit issued under G. L. c. 159B, a recital that it was "restricted to the transportation of commodities for the concerns . . . set forth in" an attached schedule stating only one concern was construed as merely reflecting the fact that currently only a contract with that one concern was on file with the department as required by § 7 and not as precluding operations under such contracts with other customers as might be filed from time to time. [446]

In a proceeding under G. L. c. 159B, § 11, fourth paragraph, added by St. 1951, c. 158, to obtain the consent of the department of public utilities to the purchase by a holding company of all the stock of a corporation operating motor trucks in Massachusetts both as a common carrier of general commodities and as a contract carrier currently serving one shipper only, a ruling by the department that the proposed sale would be "consistent with the public interest" was reasonable and lawful, irrespective of any effect of the sale upon competing carriers, where it appeared that the corporation was in a precarious financial condition and its principal officer and stockholder wished to sell his stock, that the holding company, a noncarrier which did not control any carrier in Massachusetts, through its ample assets and subsidiaries was "qualified financially, by experience and otherwise" to operate the business of the corporation and proposed to operate it "under and within the limitations of the operating rights held by" it and to expand its operations to give an improved, State wide service not otherwise available, and that no new right was being granted and no consolidation of existing carriers was involved. [451]

There was no error on the part of the department of public utilities in reopening a proceeding under G. L. c. 159B, § 11, fourth paragraph, added by St. 1951, c. 158, seeking to obtain its consent to the acquisition by the petitioner of all the stock of a carrier corporation, which the department had dismissed "without prejudice to the right of the petitioner to request that the proceeding be reopened for the purpose of introducing direct testimony," where there had been no evidence introduced upon which the department could have made a finding. [452]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 31, 1958.

The suit was reserved and reported by *Whittemore, J.,* without decision.

*Herbert Burstein,* (*William H. Marx* of New York & *John J. Carty* with him,) for the plaintiffs.

*Bernard G. Segal* of Pennsylvania, (*Irving R. Segal* of Pennsylvania, *Philip R. White* & *Norman Landstrom* with him,) for the intervener.

*Nathan S. Paven*, Assistant Attorney General, for the Department of Public Utilities.

WHITTEMORE, J.   This is a bill in equity under G. L. c. 25, § 5, as amended by St. 1953, c. 575, § 1, and St. 1956, c. 190. The plaintiffs are carriers of property by motor vehicle which are subject to G. L. c. 159B.   Retail Stores Delivery, Inc., is a contract carrier, and Stone's Express, Inc., and Railway Express Agency, Incorporated, are common carriers.   The bill seeks the annulment of an order of the department of public utilities dismissing the appeals of the plaintiffs from orders of the commercial motor vehicle division.   The principal appeal concerns the order entered May 29, 1956, which authorized United Parcel Service of America, Inc., the intervener, to acquire all the stock of Mann Forwarding Company, Inc., which had a contract carrier permit and an irregular route common carrier certificate.   We will use abbreviated titles of the parties and the division.   The department, acting through the division, held hearings, although not required by the statute to do so.   In view of the result we reach, we do not need to consider whether persons participating therein may bring before us by way of statutory appeal (G. L. c. 25, § 5) alleged errors of law in its rulings and order.

The consent of the department to the stock transfer was required by G. L. c. 159B, § 11, fourth paragraph (the statute), added by St. 1951, c. 158.   The statute provides that no one subject to the jurisdiction of the department shall acquire any of the capital stock of a motor carrier subject to the chapter unless authorized by the department; that no one not so subject, unless so authorized, shall acquire more than fifty per cent of the voting capital stock of such a carrier; and that "[n]o consent shall be given . . . unless it shall have been shown that such acquisition is consistent with the public interest, and if such consent is given in whole or in part the department may impose such terms and conditions as it shall deem to be in the public interest." The first paragraph of § 11 authorizes the transfer of an irregular route certificate or any permit and any regular

route certificate or license in whole or in part "with the approval and consent of the department after public notice . . . *and a public hearing* [emphasis supplied] at which the proposed transferee shall have established to the satisfaction of the department his willingness, fitness and ability to perform or furnish transportation for compensation under such certificate, permit or license and under this chapter . . . ." A transfer must be in connection with the bona fide sale of the business.

The statute was adopted in 1951 pursuant to recommendation of the department in 1951 House Doc. No. 101, wherein amendment was requested "[i]n order that the department may pass upon the fitness of new management of a corporation in the same manner that it now passes upon the fitness of an individual transferee."

The division found that United's acquisition of Mann's stock would be "consistent with the public interest." There were subsidiary findings as follows: Mann was in precarious financial condition; its principal officer and stockholder had entered the armed services and wished to sell his stock; United through subsidiaries had much experience in motor carrier operation and retail delivery service; it had ample ("vast") assets and was "qualified financially, by experience and otherwise to operate the business of Mann"; it proposed to expand the operations to give a State wide service not otherwise available; and the probability existed that Mann under new ownership would provide improved service.

The department on the plaintiffs' appeal from the order of the division (see *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550) ruled that it was not required to give consideration to the effect of the acquisition on other carriers and to the usefulness of the type of service proposed by United; that no broader (and if anything different, a narrower) inquiry was required on acquisitions than on transfers of permits or certificates (that is, "willingness, fitness and ability"); and that the requirement is to decide whether "such acquisition affects the shipping public favorably or adversely."

1. The plaintiffs' attack on the order and findings is based, in important part, on the contention that the department's order expanded Mann's permit; that there was in substance either a grant of a new permit under G. L. c. 159B, § 4, or an amendment under § 12, both of which sections require notice and hearing. The plaintiffs contend that Mann's contract carrier permit was only for the carriage of goods of one customer, and that the department's order, in stating restrictions on Mann's operation, actually expanded the permit.

The division had found that the proposed expansion of service made a restriction necessary, and that to "allow the same commodities to be transported in the same territory both as a common and a contract carrier would afford an opportunity for discriminatory practices"; and had ordered that, "if the transaction is consummated, the contract carrier permit No. 361 be restricted to the retail delivery of retail store merchandise and that the irregular route certificate . . . be restricted to the transportation anywhere in the Commonwealth of general commodities except the retail delivery of retail store merchandise."

We do not agree that Mann's permit was expanded. The division found that Mann was organized in Massachusetts in 1953 and operated as a common carrier by motor vehicle of general commodities and as a contract carrier by motor vehicle serving one shipper, Standard Grocery Company of Boston, "under a permit not restricted as to commodities or territory." General Laws c. 159B, § 4, provides that permits for contract carriers "shall be in a form prescribed by the department"; that the department "shall specify in the permit the operations covered thereby, and at the time of issuance, and from time to time thereafter, shall attach to it such terms and conditions, not inconsistent with the status of the holder as a contract carrier, as the public interest may require; provided, that no terms, conditions or limitations shall restrict the right of the carrier to substitute or add contracts within the scope of his permit, or to add to his equipment and facilities over the routes, between the termini, or within the territory, specified in the permit, as the develop-

ment of his business and the demands of the public shall require."

A copy of Mann's contract carrier permit is in the record; it includes this sentence: "This permit is restricted to the transportation of commodities for the concerns described and within the limits set forth in Schedule 'A' . . . ." Schedule A, attached, reads: "This permit is issued for the transportation of property for: Standard Grocery Co." There is also attached a paper reading, in type: "Date of Notice Feb. 12, 1954 Mann Forwarding Company, Inc. . . . [address]. Trans. by A. Allen Berg, Assignee, Mann Forwarding Co., Inc. to the above 2/12/54 Property for: Standard Grocery Co. . . . [address]. Revised in accordance with letter from Rate Div. 6/30/54." There appear in ink the words "Contract att." and a stamp reading "Tariff Files O.K. 6/30/54." Below this is the signature "F. J. Gannon."

General Laws c. 159B, § 7, requires that every contract carrier by motor vehicle, with inapplicable exceptions, file with the department "a copy of every contract . . . in effect in connection with its operations, which . . . shall be open to public inspection." It also provides that the department may in its discretion require all contract carriers to file schedules of their minimum charges which "shall contain a list of all parties with whom contracts are or may from time to time be in effect, and a statement of the charge for each service performed thereunder . . . ."

We construe the limitation in the outstanding permit for contract carriage to reflect the fact that there was currently only one contract on file with the department. We construe Mann's permit which was "not restricted as to commodities or territory" to be a permit good throughout the Commonwealth for operations under such contracts as may be on file with the department and from time to time noted on the permit.[1]

---

[1] United and the department in their joint brief ask us to take judicial notice of prior aspects of permit No. 361, with varying schedules A, that is, in 1941 with two customers listed, in 1944 with three customers, in 1951, seven customers, and in 1952, five customers. They ask also that we note

We note the definition of contract carrier by motor vehicle (G. L. c. 159B, § 2) as "any person, not included in the term 'common carrier by motor vehicle' or in the term 'agricultural carrier by motor vehicle,' who, under special and individual contracts or agreements . . . transports property by motor vehicle for compensation upon ways." The express provision of § 4 that "no terms, conditions or limitations shall restrict the right of the carrier to substitute or add contracts within the scope of his permit . . . as the development of his business and the demands of the public shall require" controls the form of the permit used by the department. There is nothing in the suggestion that this statutory mandate could have meaningful application to Mann's permit by allowing Mann to add contracts with Standard.

It may be that Mann's prior status as a common carrier and a contract carrier violated G. L. c. 159B, § 8, which provides that "[n]o carrier shall be permitted to hold both a common carrier certificate and a contract carrier permit until after having shown to the satisfaction of the department at a public hearing that operation under such certificate and permit is consistent with the public interest and with the policy declared in section one." But we do not think that this section and the possible violation require the construction that the permit could support only the one contract specified in the schedule attached to it in 1954.

The department was right in holding that the division correctly found that United "proposed to operate Mann under and within the limitations of the operating rights held by Mann . . . ."

that there was in the history of the permit a grandfather clause permit dated October 25, 1934 (under St. 1934, c. 264, § 1, which inserted G. L. c. 159B), authorizing "transportation of property for hire on public ways within the Commonwealth of Massachusetts as a contract carrier . . . ." They aver that the prior versions of the permit were not put in evidence because not necessary to support the application "and protestants raised no issue or contention which would make the history of the permit relevant." The plaintiffs have not contended that we should not notice the prior versions, but direct attention in argument to the fact that the permits in earlier form (though bearing the same number, beginning in 1941) were to "Esther Mann d/b/a Mann Forwarding Co." We do not find it necessary to decide whether we should thus notice the department's public files and the effect of thus enlarging the factual record in this court.

We note additionally that, if Mann's permit does not authorize any proposed service, neither the approval of the acquisition of Mann's stock by United nor the restrictions can enlarge the authority, and if there is at any time any violation of any provision of c. 159B the department may revoke the permit under § 12. *West Shore Exp. Inc.* v. *Public Serv. Commn.* 264 Wis. 65, 70–71.

There is nothing in the suggestion that Mann had lost its rights under the permit and certificate, or that such rights were "largely dormant." The division found that Mann was operating from twenty to twenty-five trucks, six to twelve of which were devoted to its contract carrier operations for Standard. The evidence supported the finding and showed a substantial number of daily shipments for a number of shippers. For reasons already stated it is insignificant that the operations were in the eastern part of the State.

2. We think that there was no error of law in the rulings of the department as applied to the facts found.

We assume for purposes of this case that the statute established a standard to be applied by the department, the application of which can be reviewed on appeal. We thus pass the question of how far the absence of a requirement for a hearing may leave it to the discretion of the department to determine the scope of its appraisal. See *Natick Trust Co.* v. *Board of Bank Incorporation*, 337 Mass. 615, and compare the statute there construed, G. L. c. 172, § 45, as amended through St. 1946, c. 87, § 2.

The plaintiffs urge that the words "consistent with the public interest" should be given the meaning which the Federal courts have ascribed to the same words in § 5 (2) of the interstate commerce act, and direct attention to essential similarities between that statute and G. L. c. 159B. See for example the declarations of policy, 54 Stat. 899 and G. L. c. 159B, § 1. They rely on the Federal cases which hold that public interest may be disserved by a consolidation of carriers which has an adverse effect on competitive carriers particularly if a public need for an expanded or more aggressive service is not established. See *McLean Trucking*

*Co.* v. *United States,* 321 U. S. 67, 86–87; *Shein* v. *United States,* 102 F. Supp. 320, 325–326 (D. N. J.), affd. 343 U. S. 944; *Houff Transfer, Inc.* v. *United States,* 105 F. Supp. 851 (W. D. Va.); *Ratner* v. *United States,* 162 F. Supp. 518 (S. D. Ill.), affd. 356 U. S. 368.

We think that the dissimilar immediate statutory context and the statutory history show that the meaning of the phrase in the statute is not determined by its meaning in the Federal act.

Section 5 (2) of the interstate commerce act (49 U. S. C. [1952]) is concerned with "Unifications, mergers, and acquisitions of control" as the title shows.[1] A like concern *may* arise under our statute upon a transfer of the authority or upon a sale of stock. The statute, however, in terms, makes no distinction between transfers or sales which will have an aspect of merging carriers and those which do not, and we are here concerned with the acquisition of a carrier by a noncarrier, as to Massachusetts, which does not control any other carrier in the jurisdiction. Such a transaction would not be subject to any requirement of approval were it to arise under the Federal act.

We think that under our statute the scope of the "public interest" is affected by the nature of the transaction. The imprecision of the phrase "consistent with the public interest" (see *M. & M. Transp. Co.* v. *United States,* 128 F.

---

[1] So far as relevant to the analogy urged by the plaintiffs, § 5 (2) applies, as stated in (a), to the merger of two or more carriers, the acquisition or operation by a carrier or carriers of all or part of the property of another, the acquisition of control of a carrier by another carrier or other carriers, through stock ownership or otherwise, the acquisition by a noncarrier of control of two or more carriers, or, having control of a carrier or carriers, the acquisition by a noncarrier of control of another. The section in (b) provides that "If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subparagraph (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon . . . [such] terms and conditions, and with . . . [such] modifications . . . ." The section in (c) directs that the commission "give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public; (2) the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transaction; (3) the total fixed charges resulting from the proposed transaction; and (4) the interest of the carrier employees affected."

Supp. 296, 300 [D. Mass.], affd. 350 U. S. 857, an "ambiguous ultimate requirement") is suited to the diversity of the stock transactions for which approval must be had.

We agree with the defendant and the intervener that where, as here, no new right was being granted, the department rightly could recognize that the usefulness of service under Mann's certificate and permit had been determined when those authorizations were issued. See *Hostetter* v. *Pennsylvania Pub. Util. Commn.* 160 Pa. Super. 94, 99; *Application of Transp. Inc. of S. D.* 75 S. D. 340, 344; *Collett* v. *Public Serv. Commn.* 116 Utah, 413; *Morris* v. *Public Serv. Commn.* 7 Utah 2d 167, 170.

That "consistent with the public interest" may in appropriate statutory context mean no more than the department ruled it to mean as applied to the sale of Mann's stock is shown in cases in other States. See *Arkansas Motor Freight Lines, Inc.* v. *Howard,* 224 Ark. 1011, 1014; *McGehee* v. *Wolchansky,* 217 Miss. 88; *Railroad Commn. of Texas* v. *Jackson,* 293 S. W. 2d 87, 90 (Tex. Civ. App.) (revd. 157 Texas, 32, 36, on the ground that "a new route would be permitted" for which "there has never been a finding of public convenience and necessity"); *Morris* v. *Public Serv. Commn.* 7 Utah 2d 167, 171. Cases where there is new single line authority or other aspects of a new right are distinguishable. *Gibbons* v. *Arizona Corp. Commn.* 75 Ariz. 214, 218. *Hagan* v. *King,* 82 So. 2d 592 (Fla.). *Railroad Commn. of Texas* v. *Jackson, supra.*

In *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550, we held that a competitor may be a person aggrieved by the authorization of a transfer. It was said (p. 551) that "the granting or the transfer of a certificate of convenience and necessity to a carrier must be considered with reference, among other things, to the facilities already afforded by competing carriers and to the effect of further competition upon them and the public." But see G. L. c. 159B, § 11, first par. The record in the *A. B. & C.* case showed that the transferor's business was virtually nonexistent. The only issue, therefore, was whether com-

petitors had standing to raise a violation of the statutory provision that "no certificate and no permit shall be transferred except in connection with the bona fide sale to the transferee of the business of the transferor." Later, the department's approval of the transfer was annulled. *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 329 Mass. 719. See Weinstein, Sales and Transfer of "Dormant" Carrier Certificates of Public Convenience and Necessity, 38 Mass. L. Q. No. 1, 73.

The entry into Massachusetts of the powerful United Parcel Service reasonably forecast increased competition for existing carriers. But we think that the statute did not require the department to appraise the extent of the effect thereof in the case of a sale of stock where no new right was granted and there was no aspect of consolidation of existing carriers. Mann, as the department's brief points out, at all times, without resort to the department, could change its managers, secure new funds, and become more active. It could emphasize new aspects of its business under its permit and certificate and install new services thereunder, as could its competitors, the plaintiffs. Mann, without department approval, could have done these things at any time after the transfer of its stock to United. That the proposal for new service was explored in connection with the application does not alter the criteria which the department was required to apply.

We rule that the department has made a reasonable and lawful determination that the sale will be "consistent with the public interest." See *M. & M. Transp. Co.* v. *United States*, 128 F. Supp. 296 (D. Mass.). We do not reach the question of the department's right to explore the issue of effect on competitors under like or other circumstances (see *Nicely* v. *Public Serv. Commn. of W. Va.* 129 W. Va. 680, 684–685), nor the correctness of its construction that the statute imposes in all cases no broader, and perhaps narrower, tests than those imposed by the first paragraph of § 11.

3. The findings were justified on the evidence. It is un-

necessary to review the evidence in detail. Some of it is referred to *supra*, page 448. It is immaterial that United did not itself, as a holding company, operate motor carrier services, or that none of its subsidiaries had engaged in the precise type of service provided by Mann. It is unrealistic to suggest that the consolidated balance sheet which showed over $10,000,000 of capital of which over $4,000,000 was earned surplus did not reflect financial ability to carry on Mann's operations. The plaintiffs' brief avers that "United's witness stated, again and again, that its intention was to conduct the services which were being conducted by Mann." There was evidence that United proposed to make a study of the feasibility of an expanded contract carrier service and expanded common carrier service, and that whether it did expand would depend on the result of the survey. While the finding of the probability of additional service was, we think, justified on the evidence, there is no basis for concluding that the finding of consistency with the public interest was dependent upon the probable expansion of services actually occurring. It would be difficult to find in the evidence a basis for refusing approval even if no expansion had been contemplated.

4. There was no error in reopening the proceedings after the division had dismissed United's petition "without prejudice to the right of petitioner to request that the proceeding be reopened for the purpose of introducing direct testimony." Of course it was within the authority of the division to do this, having ruled that United's contentions were based solely upon statements of counsel for the opposition "which are not evidence upon which the department can make a finding." *Field* v. *Field*, 264 Mass. 549, 550–551. *Ogens* v. *Northern Industrial Chem. Co.* 304 Mass. 401, 403–404.

5. We have considered all the points made by the plaintiffs including those not discussed. A decree is to be entered dismissing the bill of complaint.

*So ordered.*