Bay State Harness Horse Racing & Breeding Asso. Inc. *v.* State Racing Commn.

*Cleaveland* v. *Malden Sav. Bank,* 291 Mass. 295, 298. *Willett* v. *Webster,* 337 Mass. 98, 102. Varying the form and phrases of a declaration will not avoid the doctrine of res judicata where it is apparent that the declaration in the previous case and the declaration in the case at bar in substance and in effect are concerned with the same cause of action. *Franklin* v. *North Weymouth Coop. Bank,* 283 Mass. 275, 280.

"The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong. . . . The effect of a former judgment, if admissible, depends not upon the form of the pleadings but upon the essence of the violation of legal right on which pleadings are founded." *Mackintosh* v. *Chambers,* 285 Mass. 594, 596–597. Restatement: Judgments, § 63. Here, the conduct of the defendant, relied upon as actionable, is the same as in the earlier action. Those acts relied upon to prove liability are essentially the same as to both cases. Where the plaintiff has his option at the outset to sue in tort or contract to recover damages for the same alleged wrong, upon a state of facts which will support either, an adjudication in an earlier case is a bar to a subsequent action. *Forman* v. *Wolfson,* 327 Mass. 341.

*Exceptions overruled.*

---

BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIATION, INC. *vs.* STATE RACING COMMISSION & another.[1]

Suffolk. April 7, 1960. — May 2, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, & CUTTER, JJ.

*Racing. Moot Question.*

A proceeding against the State racing commission to set aside a license issued by it to an intervener for harness horse racing in a specified year and to have the commission ordered to consider issuing a license

---

[1] Eastern Racing Association, Inc., which intervened.

340 Mass. 776                                                    777

Bay State Harness Horse Racing & Breeding Asso. Inc. *v.* State Racing Commn.

to the petitioner for such racing in that year became moot at the expiration of that year.  [777–778]

St. 1946, c. 575, §§ 1, 2, amending G. L. c. 128A, §§ 2(5) and 3(5)(b), and authorizing for the first time the issuance by the State racing commission of licenses for harness horse racing at night, had no effect on or relation to approval by the appropriate municipal authorities of the "location" of race tracks under c. 128A, § 13A, and c. 271, § 33; and one granted a license after 1946 for night harness horse racing at a location "once" approved for horse racing by the appropriate municipal authority before 1946 was not required to secure approval of the location by the authority again before conducting night harness horse racing there.  [779–780]

PETITION for review, filed in the Superior Court on March 2, 1959.

The petitioner appealed from an interlocutory decree by *Fairhurst*, J., sustaining a demurrer and a final decree by *Cahill*, J., dismissing the petition.

*Charles M. Goldman*, (*Gerald Gillerman* with him,) for the petitioner.

*Edward O. Proctor*, for the intervener, (*Joseph T. Doyle*, Assistant Attorney General, for the respondent, with him).

CUTTER, J.  The petitioner (Bay State) filed in the Superior Court a petition for review (see G. L. c. 30A, § 14) of the action of the State racing commission in granting a license to Eastern Racing Association, Inc. (Eastern), for twenty-three nights of harness horse racing in 1959.  The commission's action, if valid, precluded Bay State from obtaining more than sixty-seven nights of harness racing in 1959 in view of the statutory maximum of ninety nights of such racing for all applicants.  See G. L. c. 128A, § 3 (j), as appearing in St. 1946, c. 575, § 4.  Bay State prayed that Eastern's license be set aside and that the commission be ordered to consider issuing a license to Bay State for an additional twenty-three days in 1959.  The commission's demurrer (on the grounds that Bay State did not state a case and was not "aggrieved") was sustained by interlocutory decree.  A final decree was entered dismissing the petition. Bay State has appealed from each decree.

1. This case has now become moot, for we can grant no

relief concerning 1959 harness races which have already been run. Licenses for harness horse racing are granted annually. G. L. c. 128A, § 2 (as amended through St. 1950, c. 716 [2]). The parties, however, inform us that a similar case relating to 1960 harness racing, now pending in the Superior Court, raises one question of law presented by the 1959 case and that this question is likely to arise also in future years unless now decided. They urge us to indicate our views on several issues to guide administrative action under the applicable statutes. See *Cumberland Farms, Inc.* v. *Milk Control Commn.*, *ante*, 672, 674–675, and cases cited. There are, of course, substantial, practical, time obstacles (see *Ward* v. *Selectmen of Scituate*, 334 Mass. 1, 2–4; *Zelman* v. *Alcoholic Beverages Control Commn.* 335 Mass. 515, 519) to obtaining before the racing season in any year a decision of the Superior Court and, on appeal, of this court after action by the commission on an annual license. See *Mullholland* v. *State Racing Commn.* 295 Mass. 286, 288–289. These time obstacles, and the possibility that some future litigation may be avoided, lead us to state briefly our views on the one question of substantive law which has arisen both in 1959 and in 1960. Two other substantive questions, presented in 1959, did not arise in 1960 and need not now be stated. We make no intimation whether Bay State is a "person . . . aggrieved" under G. L. c. 30A, § 14.

2. It is alleged in the petition that when pari-mutuel horse racing was authorized in 1934, "Eastern obtained the approval of the . . . [appropriate authorities] of Boston and Revere . . . for daytime racing . . . at Suffolk Downs. . . . Night . . . harness horse racing . . . was not authorized until . . . 1946, and Eastern never has obtained the approval of the . . . [authorities] . . . of Boston and Revere to conduct . . . night harness horse racing at Suffolk Downs." Bay State contends that, under G. L. c. 128A, § 13A (as amended through St. 1951, c. 777, § 2), and c. 271,

---

[2] Section 2 has also been amended by St. 1958, c. 229, § 1, and by St. 1959, c. 295, § 1.

340 Mass. 776                                            779

Bay State Harness Horse Racing & Breeding Asso. Inc. v. State Racing Commn.

§ 33,[3] a separate approval of the appropriate authorities of Boston and Revere was required after 1946 before Eastern could conduct night harness horse racing.

When G. L. c. 128A was inserted by St. 1934, c. 374, § 3, G. L. c. 271, § 33, had long been on the statute books. Chapter 128A gave to the commission general jurisdiction over pari-mutuel racing. Section 13A, added by St. 1935, c. 454, § 8, tended to minimize any possible conflict between c. 128A and § 33, with respect to the control of local communities over racing under c. 128A, by limiting local authorities to approval of "the location of the race track." When "the location . . . has been 'once approved' by the local authorities their jurisdiction is exhausted." *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, 416–418. Chapter 128A, § 3, in its original form (St. 1934, c. 374, § 3) permitted harness racing. See c. 128A, § 3 (j). Section 2 (5) of the original act, however, permitted "horse racing" only between the hours of noon and 7 P.M. By St. 1946, c. 575, §§ 1, 2 (see for recent amendments St. 1958, c. 229, §§ 1, 2), harness racing hours were altered so as to permit such racing either between noon and 7 P.M. or between 7 P.M. and midnight. This statutory change in no way affected, or related to, local approval of the location of a track. The allegations of the petition show that the location of Suffolk Downs was approved once by the local authorities for horse racing prior to 1946. The 1946 amendment imposed no new requirement of any further local approval merely because of the provision permitting harness racing at night thereafter. No statutory provision brought to our attention tends to cut

---

[3] General Laws c. 271, § 33, provides, "No land within a town shall be . . . used as a race ground or trotting park without the previous consent of and location by the mayor and aldermen . . . who may regulate and alter the terms and conditions under which the same shall be . . . used . . . and may discontinue the same when in their judgment the public good so requires . . . ." General Laws c. 128A, § 13A, now reads in part, "The provisions . . . of . . . [§] thirty-three . . . of chapter two hundred and seventy-one . . . shall not apply to race tracks or racing meetings . . . conducted by licensees under this chapter, . . . except that no license shall be granted by the commission for a racing meeting in any city . . . unless the *location of the race track* where such meeting is to be held . . . has been *once* approved by the mayor and aldermen . . . as provided by said section thirty-three . . . after a public hearing . . . ." (emphasis supplied).

down, by any requirement of more than one local approval of the site of a track, the broad discretion of the commission to select licensees or to refuse licenses. See G. L. c. 128A, § 11, inserted by St. 1934, c. 374, § 3.

3. There is no occasion to consider the appeal from the interlocutory decree sustaining the demurrer. The final decree dismissing the petition is affirmed, not on the merits, but because this case has become moot.

*So ordered.*