BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIA-
TION, INC. *vs.* STATE RACING COMMISSION.

Suffolk.    May 4, 1961. — June 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Racing. License. Quasi Judicial Tribunal. Constitutional Law,* Dele-
gation of powers. *Statute,* Construction. *State Administrative Proce-
dure Act. Equity Pleading and Practice,* Petition.

G. L. c. 128A must be construed as requiring the State racing commission to
apply general standards of public interest, convenience, and necessity
in exercising its discretion under § 3 to grant a license or under § 11
to refuse a license to conduct horse or dog racing meetings and to make
regulations governing them, in order to avoid doubts about the constitu-
tional validity of the delegation of authority to the commission and to
protect the public concern in the manner in which, and by whom, such
meetings are conducted.    [699–700]
The State racing commission, authorized by G. L. c. 128A, § 9, to make
regulations respecting horse and dog racing meetings, is an "agency"
within § 1 (2) of c. 30A, the State administrative procedure act, and a
proceeding upon an application for a license to conduct a racing meet-
ing, required by c. 128A, § 3, to include a public hearing by the com-
mission, is an "adjudicatory proceeding" under § 1 (1) of c. 30A, which
must be conducted in accordance with §§ 10 and 11.    [700–701]
A decision by the State racing commission under G. L. c. 128A, § 3, upon
an application for a license to conduct horse or dog racing meetings
must, as required by c. 30A, § 11 (8), be accompanied by findings of
fact adequate to support it and to demonstrate that relevant aspects of
the public interest were considered.    [701]
An applicant to the State racing commission for a license to conduct
harness horse racing meetings, who was granted a license for fifty-seven
racing days in a certain year but whose request for a license for ten
additional days in that year was denied, and who was precluded from
being granted a license for such additional days by a grant to another
applicant of a license for thirty-three racing days in that year and by
the provision of G. L. c. 128A, § 3 (j), that no "licenses shall be issued
for more than an aggregate of ninety racing days in any one year at
the harness horse racing meetings combined," was a person "aggrieved"
under c. 30A, § 14, by both the commission's decision denying his request
for a license to conduct the ten additional meetings and by its decision
granting to the other applicant a license to conduct thirty-three meetings,
and was entitled to judicial review of both decisions.    [701–703]
A petition under G. L. c. 30A, § 14, to review two decisions by the State
racing commission, one granting the petitioner a license for a certain

342 Mass. 694                                                    695

Bay State Harness Horse Racing & Breeding Assn. Inc. *v.* State Racing Commn.

number of harness horse racing meetings but denying his application respecting an additional number of such meetings, the other granting an alleged competitor of the petitioner a license for a number of meetings which precluded granting the petitioner a license for the additional meetings because of the limitation in c. 128A, § 3 (j) on the aggregate number of meetings, was not demurrable as multifarious: problems presented by the mutually exclusive applications were directly interdependent and required a fair comparison of both applicants even though under c. 128A, § 3, a separate public hearing was held on each application.   [703]

A petition for judicial review under G. L. c. 30A, § 14, of two decisions of the State racing commission upon applications by the petitioner and an alleged competitor for licenses for harness horse racing meetings sufficiently alleged, as against a demurrer, a failure of the commission to consider various relevant factors and noncompliance by it with the requirement of § 11 (8) that it set forth the facts underlying the decisions.   [703–704]

In a petition under G. L. c. 30A, § 14, for review of decisions of the State racing commission on applications for licenses for racing meetings for 1961, allegations of invalidity in the commission's decisions respecting like licenses in 1959 and 1960, which had become moot, should be construed not as attempting to secure a review of the prior decisions but only as references to historical background having a bearing on the 1961 decisions.   [704–705]

PETITION filed in the Superior Court on March 3, 1961.

The case was heard by *Forte,* J., on demurrer.

*Claude B. Cross, (John M. Reed & Charles M. Goldman* with him,) for the petitioner.

*Edward O. Proctor, (Theodore R. Stanley & Austin Broadhurst* with him,) for the respondent.

CUTTER, J.   This is a petition for review under the State Administrative Procedure Act, G. L. c. 30A, § 14,[1] of two decisions of the State racing commission, dated January 30,

---

[1] Section 14, inserted by St. 1954, c. 681, § 1, reads in part, "Except [exception not pertinent] . . . any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof . . . .   (2) The petition [for review] . . . shall include a concise statement of the facts upon which jurisdiction and venue are based, facts showing that petitioner is aggrieved, and the . . . grounds specified in paragraph (8) . . . upon which petitioner contends he is entitled to relief. . . . (8) The court . . . may set aside or modify the decision . . . if it determines that the substantial rights of any party may have been prejudiced because the agency decision is —. . . (c) Based upon an error of law; or . . . (e) Unsupported by substantial evidence; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.   The court shall make the foregoing determinations upon . . . the entire record, or such portions of the record as may be cited by the parties. . . ."

1961, one granting a license to the petitioner (Bay State) to conduct pari-mutuel harness racing for fifty-seven days in 1961 and one granting a license to Eastern Racing Association, Inc. (Eastern), to conduct thirty-three days of such 1961 racing. The commission (see G. L. c. 6, § 48, as amended through St. 1955, c. 730, § 2) considers applications (see G. L. c. 128A, § 2, as amended through St. 1959, c. 295, § 1) for licenses to conduct racing meetings and, "after . . . a public hearing in the . . . town wherein the license is to be exercised, may issue a license to the applicant." G. L. c. 128A, § 3, as amended through St. 1959, c. 295, § 2. General Laws c. 128A, § 3 (j), as amended by St. 1946, c. 575, § 4,[2] provides that no "licenses shall be issued for more than an aggregate of ninety racing days in any one year at the harness horse racing meetings combined."[3]

Bay State in its petition alleges the granting of 1961 licenses as outlined above; that the commission refused "to grant or renew" Bay State's "license for a greater number of days as applied for"; and that under G. L. c. 30A, § 14, such action constitutes a final decision of the commission in an adjudicatory proceeding. To show that Bay State is aggrieved, Bay State in its petition relies upon the circumstance that the commission refused Bay State's request for a license to conduct harness racing for more than fifty-seven days and that the "granting of a license to Eastern for thirty-three racing days precluded . . . [the commission] from granting . . . [Bay State] a license for more than fifty-seven racing days." It is alleged also that "the granting of the license to Eastern has worked and will continue to work economic injury to . . . [Bay State] as a competitor of Eastern in the same narrow market by decreasing the attendance of patrons and making unavailable many standard bred harness horses."

The petition also alleged the following facts. Bay State introduced harness racing in Massachusetts in 1947 and

---

[2] Later amendments of § 3 do not affect clause (j).

[3] Not including meetings at State or county fairs and subject to various restrictions not relevant.

thereafter has conducted such racing each year. It has built in Foxborough expensive facilities which "are usable only for such purpose." In the initial years Bay State "suffered operating losses due to the unfamiliarity of the racing public . . . with night harness . . . racing." Bay State persistently tried to improve the quality of its meetings and reinvested earnings in improving its facilities. "As a result of its efforts . . . alone . . . [Bay State] has succeeded in popularizing the sport . . . and has succeeded in making . . . its track profitable. In 1959 . . . [Bay State] conducted a . . . meeting under a license . . . lasting sixty-seven days." In 1960, the commission cut Bay State's license to fifty-seven days and then "made no findings. . . to justify depriving . . . [Bay State] of the ten days which it lost in that year. Its decision in 1961," the petition avers, "continues its [1960] decision . . . and . . . is based upon an error of law, unsupported by substantial evidence, and unwarranted by the facts on the record, as well as being arbitrary, capricious, and an abuse of discretion." Bay State contends that in "refusing to renew licenses for harness . . . meetings, . . . [the commission] is required," under G. L. c. 30A, §§ 11 (8) and 13, "to make appropriate findings to justify the refusal, and refusal to grant a license . . . for a period . . . equal to the period of the previous year's license constitutes such a refusal."

"In 1958 Eastern, which had theretofore been conducting running . . . racing . . . at its track [Suffolk Downs] . . . applied . . . for a license to hold a harness . . . meeting of twenty-three days." This application was denied in 1958, but was granted in 1959 on substantially the same evidence. The 1959 decision, it is averred, was unsupported by substantial evidence, arbitrary, and capricious, and the 1961 decision "continues the 1959 decision and is . . . defective upon the same grounds."

The petition prays that the 1961 license to Eastern "be set aside" and that the commission "be ordered to reconsider . . . [Bay State's] application . . . for ten [additional] days of . . . racing"; that the court declare that

the commission in granting licenses for increased days of racing "is required to give consideration to and make appropriate findings in respect to the adequacy of existing facilities for such meetings and the economic injury which existing licensees would sustain in connection with . . . increased licenses."

The commission filed a demurrer on the grounds (1) that the petition "does not set forth facts . . . sufficient to entitle . . . [Bay State] to [court] review"; (2) that Bay State "is not a person entitled to review"; (3) that Bay State is not "aggrieved" within G. L. c. 30A, § 14; and (4) that the petition is multifarious in seeking to review the action of the commission in granting two separate licenses. Its demurrer was also directed specially to certain specific allegations mentioned below.

The petitioner appeals from an interlocutory decree sustaining the demurrer and a final decree dismissing the petition.

1. General Laws c. 128A, § 3, permits the commission to grant a license after the required public hearing. Section 11 purports to give the commission "full discretion to refuse to grant a license to any applicant for a license or to suspend or revoke the license of any licensee. If any license is suspended or revoked, the commission shall . . . record . . . its reasons . . . ." In *Landers* v. *Eastern Racing Assn. Inc.* 327 Mass. 32, 45, this court (prior to the enactment in 1954 of G. L. c. 30A) considered the bearing of § 11 upon the constitutional validity of G. L. c. 128A, and said "that c. 128A does not constitute an improper delegation of legislative authority . . .. Without reciting in detail the directions to and the restrictions imposed upon the commission by the Legislature, it is enough to say that elaborate and detailed procedures are established for the guidance of the commission in granting licenses." Cf. *Mullholland* v. *State Racing Commn.* 295 Mass. 286, 291–292 (where the constitutionality of c. 128A was not decided because the plaintiffs had no standing to assert by bill in equity that c. 128A was invalid).

342 Mass. 694                                    699

Bay State Harness Horse Racing & Breeding Assn. Inc. v. State Racing Commn.

We think that c. 128A contemplates that the commission, although given a broad discretion in granting licenses (see *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 340 Mass. 776, 779–780), shall conform to general standards related to the public interest. A few of these, stated specifically in c. 128A, § 3, prescribe periods of the year and hours of the day during which particular types of racing may be licensed and impose restrictions designed to prevent improper persons from being licensed (see e.g. § 3 [k] and [j]). From various provisions of the chapter may be implied a legislative requirement that licensees shall be financially responsible, be able to meet obligations to the Commonwealth, have suitable and safe facilities for the service of the patrons, and be persons likely to conduct racing in accordance with approved practices and in a manner consistent with the public safety, health, morals, and welfare. Examination of the chapter, however, furnishes few specific standards, either to guide the commission in granting and refusing licenses, or in framing rules and regulations under § 9 (as amended through St. 1935, c. 454, § 5). Nevertheless, we are bound so to interpret the statute as to avoid serious doubts about its constitutional validity. See *Opinion of the Justices,* 341 Mass. 760, 785, and cases cited. The validity of the delegation of authority to approve or refuse licenses and to make regulations (see *Opinion of the Justices,* 341 Mass. 738, 757–759) would be in doubt if the statute did not require the commission to apply general standards of public interest, convenience, and necessity, similar to those which have been sometimes implied in the regulation of public utilities. See e.g. *Retail Stores Delivery, Inc.* v. *Department of Pub. Util.* 339 Mass. 441, 448–451; *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 546–547. See also Davis, Administrative Law (1958 ed.) §§ 2.01–2.16, esp. § 2.08; Monaghan, The Constitution and Occupational Licensing in Massachusetts, 41 B. U. L. Rev. 157, 180–181; n. 136; note, 43 Harv. L. Rev. 302. Although a race track is hardly a public service company in the usual sense, vari-

ous aspects of such an enterprise give rise to a substantial public concern about the manner in which, and by whom, it is conducted. Among these aspects are (1) the pari-mutuel gambling associated with racing, (2) the circumstance that the large groups of spectators require safe and convenient facilities, (3) the interest of members of the public in racing competition honestly managed and of good quality, and (4) the necessity of having and maintaining proper physical facilities for race meetings and, consequently, to ensure the continuance of such facilities in the future, the necessity of fair treatment of the economic interests (see *Carroll Bdcst. Co.* v. *Federal Communications Commn.* 258 F. 2d 440, 443–444 [Ct. App. D.C.]) and investments of those who in good faith have provided and must maintain such facilities. We think that c. 128A impliedly requires the commission to consider these and other elements of the public interest in determining what action in particular circumstances will conform to the usual standards[4] of public convenience, health, safety, morals, and welfare. The commission is not required to give predominating weight to any one factor, but it is bound to consider (and, as stated below, to make findings on) all relevant issues. Chapter 128A, § 11, cannot be taken literally as giving to the commission an arbitrary and uncontrolled discretion if the chapter is to constitute a valid delegation of legislative authority. See *Hazel Park Racing Assn. Inc.* v. *Racing Commr.* 336 Mich. 508, 512–517, and cases cited.

2. Judicial review may be obtained under G. L. c. 30A, § 14, by any person aggrieved by a final decision of an agency "in an adjudicatory proceeding." The commission is an "agency" within the meaning of c. 30A, § 1 (2), for it is a "commission . . . of the state government, authorized

---

[4] Bay State argues that failure to grant in one year an annual license, similar to one which an applicant has held in a prior year, is in effect a refusal to renew the prior license within the meaning of G. L. c. 30A, § 13, and in some respects comparable to a revocation of a license under c. 128A, § 11. This question we need not decide. Nevertheless, the two sections just cited may have some tendency to indicate by analogy that, in the granting and revocation of licenses, the fact that a licensee has previously held and acted properly under a similar license is a factor to be weighed with other factors.

342 Mass. 694                                                      701

Bay State Harness Horse Racing & Breeding Assn. Inc. *v.* State Racing Commn.

by law to make regulations." An application for a racing license is an "adjudicatory proceeding" under § 1 (1) for it is "a proceeding before an agency in which the legal . . . privileges of specifically named persons [the applicants] are required by . . . [a] provision of the General Laws [G. L. c. 128A, § 3] to be determined after opportunity for an agency hearing." See discussion in 1954 Ann. Surv. Mass. Law 126, 135–136. Cf. *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372, 375; *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. 615, 616–617 (no agency hearing required); *Springfield Hotel Assn. Inc.* v. *Alcoholic Beverages Control Commn.* 338 Mass. 699, 702. Consequently, the proceedings before the commission with respect to a license application must be conducted in accordance with the provisions of c. 30A, §§ 10 and 11, including § 11 (8) which requires that "[e]very agency decision shall be in writing or stated in the record" and "shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision [subject to an exception not pertinent here]."

The provisions of c. 30A, when read with those found in c. 128A, amply establish that it is the duty of the commission to make adequate subsidiary findings of fact to support its decision (see analogy of *Herson's Case,* 341 Mass. 402, 407, and cases cited) and to demonstrate that the granting or denial of a license has been passed upon after consideration of relevant aspects of the public interest. It can then be ascertained by a reviewing court from the record before the commission, as contemplated by c. 30A, § 14 (8), whether the decision and the findings were supported by substantial evidence and otherwise comply with the standards expressed or necessarily implied in c. 128A.

3. Bay State is a person aggrieved by the denial of its request for a license for the extra ten days of racing which it sought. It properly could apply for them and is adversely affected by the denial of the application. See *American Can Co. of Mass.* v. *Milk Control Bd.* 313 Mass. 156, 160–161. A more difficult question is whether Bay

State is aggrieved by the commission's decision granting to Eastern a number of days which prevents the commission from granting also the full number of days requested by Bay State, in view of the statutory prohibition in c. 128A, § 3 (j), of more than a total of ninety days of harness racing by all licensees in any year.

In Massachusetts, the closest case is *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 327 Mass. 550, 551–552, *S. C.* 329 Mass. 719, where a motor carrier was held to be a person aggrieved by an order of the department allowing transfers of certificates of public convenience and necessity by one competitor to another. Cf. *Retail Stores Delivery, Inc.* v. *Department of Pub. Util.* 339 Mass. 441, 450–451. We are dealing not merely with ordinary competitors, but with competitors which (in respect of the disputed ten days of harness racing) have mutually exclusive demands. If Eastern is given thirty-three days, Bay State under c. 128A, § 3 (j), cannot be given the sixty-seven days which it recently had and desires to have again. Consequently, Bay State invokes the doctrine of *Ashbacker Radio Corp.* v. *Federal Communications Commn.* 326 U. S. 327, 329–334, under which the Federal courts have taken the practical, sensible position, in effect, that where two or more persons seek mutually exclusive privileges or licenses, each applicant has an interest entitling it to hearing and review by some method which effectively compares the applicants in the light of applicable aspects of the public interest. See *Federal Communications Commn.* v. *National Bdcst. Co. Inc. (KOA),* 319 U. S. 239, 246–247, and cases cited; *Delta Air Lines, Inc.* v. *Civil Aeronautics Bd.* 228 F. 2d 17, 20–23 (Ct. App. D. C.); *Carroll Bdcst. Co.* v. *Federal Communications Commn.* 258 F. 2d 440, 442–444 (Ct. App. D. C.); *Delta Air Lines, Inc.* v. *Civil Aeronautics Bd.* 275 F. 2d 632, 636–641 (Ct. App. D. C.), cert. den. 362 U. S. 969; Davis, Administrative Law (1958 ed.) § 8.12. The *Ashbacker* case was cited in the *A. B. & C. Motor Transp. Co.* case in relation to the question whether a competitor was "aggrieved."

In this type of situation the comparative appraisal of competitors is essential. Accordingly, we apply the *Ashbacker* case. We hold that Bay State is an aggrieved person entitled to present for judicial review not only the commission's denial of its own application but also the commission's action in granting Eastern a license which would preclude issuing the full license sought by Bay State.

4. What has already been said disposes of the ground of demurrer that Bay State "is not a person entitled to review" or "aggrieved." It also disposes of the contention that the petition is multifarious (cf. *Laverty* v. *Associated Gas & Elec. Sec. Co. Inc.* 300 Mass. 79, 81–83; *Defiance Printed Circuit Corp.* v. *Goodwin,* 337 Mass. 473, 476). In the view which we take of the case, the problems presented to the commission by the mutually exclusive applications are not really separate although they involve separate applicants, but are directly interdependent. They require fair comparative consideration of both applicants even if a separate public hearing under c. 128A, § 3, must be held (and at a different place) upon each application. The equitable defence of multifariousness has no application in the circumstances to this statutory petition for review.

5. The first ground of demurrer was that the petition did not set forth facts entitling Bay State to judicial review of the commission's decisions. Bay State's general allegation that the commission's decisions were arbitrary and capricious, standing alone, does not present a basis for review. See *Criscuolo* v. *Department of Pub. Util.* 302 Mass. 438, 442. The petition, however, also alleged that the commission was required but failed "to consider the adequacy and availability of facilities afforded by existing tracks," "to consider as a relevant factor economic injury to persons holding licenses . . . who have invested substantial capital in their facilities," and to make findings with respect to each of these matters. These allegations, read in the light of the general allegations of fact in the petition (summarized earlier in this opinion), sufficiently present a question under § 11 (8) of the legal adequacy of the commission's

findings and decisions, appropriate for judicial review under § 14 (8).

Bay State's allegations of fact set out the conflict between its application and that of Eastern with respect to the disputed ten days of racing. Under c. 30A, § 11 (8), Bay State was entitled to have the commission make adequate findings with respect to each issue of fact (including those specifically mentioned in the petition for review) bearing upon a fair comparison between Bay State and Eastern. The commission was required to state in its decision why, in the public interest, it resolved the conflict as it did, and to find the facts upon which it relied in making that decision. As to the issues specifically mentioned in the petition for review, a fair comparison of the facilities of each applicant was required. It also might be relevant to a decision whether denial of ten days of racing to one or the other applicant would so adversely affect its investment or economic standing as to impair its ability to continue to serve the racing public properly or would be otherwise disadvantageous to the public.

The commission, under c. 128A, § 11, had wide discretion in determining the weight it would give to these and the numerous other matters appropriate for consideration. It was bound, however, in reaching its decision to comply with c. 30A, § 11 (8). The petition for review adequately alleged facts showing noncompliance. The demurrer cannot be sustained on the first ground.

6. Much the same considerations apply to the special demurrer to specific paragraphs of the petition for review. These paragraphs somewhat circuitously allege (a) that the commission's decision in 1959, giving Eastern twenty-three days of racing, and its decision in 1960, giving Eastern thirty-three days of racing, were "based upon an error of law, unsupported by substantial evidence," and (b) that the 1961 decision continued the earlier decisions and was itself defective on the same grounds. We construe these allegations as asserting merely that the 1961 decision itself was erroneous, and as referring to the 1959 and 1960 decisions,

not in an attempt to review them (for they are now moot, see *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 340 Mass. 776, 777–778) but only as history appropriately to be considered by the commission in deciding the 1961 license cases. Whether the 1961 decisions were supported by substantial evidence will depend upon the contents of the 1961 records before the commission. Except as specifically included in the 1961 records, the earlier records will not be open for consideration in hearing on the merits the 1961 petition for review. This ground of demurrer also is without merit.

7. The interlocutory decree sustaining the demurrer and the final decree are reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*